C T

ORIGINAL

TE

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2011 MAR 24  AM 11: 55

ERK OF COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JONATHAN PIERCE** | § | |
| **Plaintiff,** | § | |
| | § | **4-11CV - 193 - Y** |
| **v.** | § | CIVIL ACTION NO. _CV - 193 - Y_ |
| | § | |
| | § | |
| **THE CITY OF ARLINGTON;** | § | |
| **POLICE CHIEF THERON** | § | |
| **BROWN; DEPUTY POLICE** | § | |
| **CHIEF JAMES HAWTHORNE;** | § | |
| **and OFFICER D. VO** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

This is an action for monetary damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and against  Chief Theron Brown, Deputy Police Chief James Hawthorne, Office D. Vo and the City of Arlington.

## I.

## PARTIES

1. Plaintiff is Jonathan Pierce.

2. Defendants are the City of Arlington, Chief Theron Brown, Deputy Police Chief James Hawthorne and Officer D. Vo.

3. Defendant City of Arlington may be served with process by serving Arlington City

Mayor Robert Gluck at the Office of the Mayor & Council 101 W. Abram Street, Arlington, Texas 76004-0231.

4. Defendant Police Chief Theron Brown is an individual who may be served with process at his place of employment at the Ott Cribbs Public Safety Center, 620 W Division Street, Arlington, TX 76004-1065.

5. Defendant Deputy James Hawthorne is an individual who may be served with process at his place of employment at the Ott Cribbs Public Safety Center, 620 W Division Street, Arlington, TX 76004-1065.

6. Defendant D. Vo, Badge No. 2635, is a police officer with the City of Arlington who may be served with process by serving him at his place of employment the Ott Cribbs Public Safety Center, 620 W Division Street, Arlington, TX 76004-1065.

## II.

## JURISDICTION

7. The Court has jurisdiction over this lawsuit because the action arises under Title 28 U.S.C. §§ 1331 and 1343.

## III.

## CONDITIONS PRECEDENT

8. All conditions precedent have been performed by Plaintiff or have occurred.

## IV.

## <u>FACTS</u>

### PLAINTIFF GOES TO SHOOT POOL WITH FRIENDS

9. On or about March 19, 2011, Plaintiff and his two friends, Daarian Cox and Parthenia Jessie Hodges went to play pool at Arlington's "Rack Daddy's."

10. While Cox and Hodges waited outside, Plaintiff entered the pool hall to retrieve money from an ATM inside to pay the entry fees for all three individuals. Plaintiff explained what he was doing to the security guard and door personnel and both allowed him to enter.

11. While Plaintiff went inside, Cox and Hodges waited outside.

12. Having retrieved the money from the ATM, Plaintiff then returned to the front of the building.

13. As he was exiting the front of the building, Plaintiff and the others then heard a loud bang and suddenly several people began running frantically toward Plaintiff.

### ARLINGTON POLICE PURSUE A WHITE MALE

14. Unbeknownst to Plaintiff, the Arlington Police Department had been pursuing a vehicle operated by Ronnie Lee Malone, Jr.

15. Alone in the vehicle, Malone entered the parking lot and slammed into a parked mini-van. The violence of the collision caused patrons in the parking lot to run inside Rack Daddy's.

16. Malone emerged from the vehicle and ran past Rack Daddy's while Arlington Police officers, including Defendant Vo, pursued him.

17. Malone is a white 26-year-old Caucasian who weighs approximately 200 pounds.

18. Plaintiff, an African-American Navy veteran, is 33-years-old and weighs approximately 131 pounds.

19. Malone was wearing shorts. Plaintiff was wearing jeans.

20. Malone was wearing a distinct light blue Orlando Magic basket ball jersey with the name Howard and the number 12.[1]

21. Plaintiff was wearing jeans, a white T-shirt underneath a signature dark green jersey of the Boston Celtics with the name Pierce and the number 34.[2]

22. Hodges, who remained outside, saw Officer Vo also emerge from his vehicle and chase Malone.

23. Like the other officers, Vo pursued Malone.

24. Hearing the noise and seeing the patrons run, Plaintiff moved back inside Rack Daddy's past the security guard and hostess. Other patrons then followed.

25. Vo, who had been pursuing Malone, inexplicably pursued Plaintiff past Cox and the security guard—both of whom yelled repeatedly to Defendant, "You are after the wrong person!"

---

[1] This is the jersey for Magic player Dwight Howard.
[2] This is the jersey for Celtics player Paul Pierce.

## OFFICER VO SHOOTS PLAINTIFF WITHOUT CAUSE

26. Suddenly and without notice, Officer Vo shot Plaintiff in the back side with a Taser without probable cause.

27. At the time Plaintiff was shot in the back, he was unarmed and was neither resisting nor evading an arrest.

28. Plaintiff immediately fell to the ground.

29. Cox who drew and got down on his knees pled with Defendant Vo again, telling the officer again that he had the wrong individual.

30. "Get the fuck back," Vo yelled back at Cox. He tased Plaintiff again and yelled, "Get the fuck down. Get the fuck down. Stay down."

31. Vo then becomes defensive and belligerent with witnesses who continue to tell him that he has the wrong person.

## OFFICER VO TASES PLAINTIFF AGAIN WITHOUT CAUSE

32. While still more people are telling Vo that he has the wrong individual in custody, Vo tases Plaintiff *again*.

33. The officer yanks Plaintiff on to his stomach and places him in handcuffs.

34. Vo then drags Plaintiff outside where he confronts a crowd of citizens who tell him that he has the wrong individual and, by then, a group of Arlington Police officers who have Malone in custody.

35. Plaintiff is then placed on the ground for close to an hour while a crowd continues to tell the officers repeatedly that they had the wrong person in custody.

36. After approximately an hour, Plaintiff is finally released. Defendant Vo never identifies himself or offers any apology for shooting Plaintiff without probable cause.

37. The only explanation Defendant Vo made to Plaintiff was that he had told him to stop and that the officer actually touched him.

38. Plaintiff and other witnesses never heard Vo give Plaintiff any verbal warning or command. Likewise, no witness ever saw Defendant get close enough to touch Plaintiff.

39. Given the radical difference in physical descriptions between Malone and Plaintiff, Vo's representations that he was actually close enough to Plaintiff, before he tased him repeatedly, are incredible.

## TASERS AND DEADLY FORCE

40. According to Amnesty International, more than 351 people have died after being shocked by police Tasers since 2001. The group has urged law enforcement agencies to suspend Taser use pending more research on how the shock affects those who have medical problems such as a heart condition or who are under the influence of drugs or alcohol.

41. One blog that follows tasers in the United Stat reports that there were 96 Taser-related deaths between January 2009 and September 2010.[3] African-Americans—who represent only 12 percent of the national population—constituted 37 of those deaths, more than three times their representation in the larger population.[4]

42. These racial percentages correlate with the present case, as Malone, despite being the suspect of some offense, was not even tased by the other Arlington officers.

---

[3] *See Suburban Hum,* 96 Taser-Related Deaths in U.S. Since January (Sept. 5, 2009).
[4] *Id.*

PLAINTIFF'S ORIGINAL COMPLAINT

43. Tarrant County Sheriff Dee Anderson publicly stated in October, 2009 that his department does not use Tasers because he does not want to risk that one of his deputies might kill someone.

44. As has been explained by the manufacturer publicly and in civil rights and product liability litigation, TASER devices utilize compressed nitrogen to project two small probes up to various ranges at a speed of over 160 feet per second.[5] These probes are connected to the TASER device by insulated wires. An electrical signal of up to 50,000 volts is transmitted through the wires to where the probes make contact with the body or clothing, resulting in an immediate loss of the person's neuromuscular control and the ability to perform coordinated action for the duration of the impulse.

45. Because of their ability to cause severe pain and violently and suddenly seize individuals, the established consensus among Courts[6] and the law enforcement is that Tasers are considered, at least, an "intermediate" weapon on traditional use of force continuums.[7]

46. In a 2005 report on the use of tasers in seven selected law enforcement agencies, the United States Government Accountability Office (GAO) found that six of the seven agencies permitted taser use only when situations had reached the third ("Volatile") and fourth ("Harmful") levels of the five-level Federal Law Enforcement Training Center

---

[5] *See, e.g., Bryan v. McPherson,* 630 F.3d 805, 813 (9th Cir. 2009)

[6] *Bryan,* 630 F.3d at 811 *citing Orsak v. Metro. Airports Comm'n,* 675 F.Supp.2d 944, 957-59 (D.Minn.2009); *Cyrus v. Town of Mukwonago,* 2009 WL 1110413, at *21 (E.D.Wis. April 24, 2009); *Kaady v. City of Sandy,* 2008 WL 5111101, at *16 (D.Or. Nov.26, 2008); *McDonald v. Pon,* 2007 WL 4420936, at *2 (W.D.Wash. Dec.14, 2007); *Beaver v. City of Federal Way,* 507 F.Supp.2d 1137, 1144 (W.D.Wash.2007); *Parker v. City of South Portland,* 2007 WL 1468658, at *22 (D.Me. May 18, 2007); *DeSalvo v. City of Collinsville,* 2005 WL 2487829, at *4 (S.D.Ill. Oct.7, 2005).

[7] *Bryan,* 630 F.3d at 811 *citing Safety and Injury Profile of Conducted Electrical Weapons Used by Law Enforcement Officers Against Criminal Suspects,* Annals of Emerg. Medicine, April 2009, at 480.

Use-of-Force Continuum.[8]  "In other words," one court concluded,  "these six agencies classified tasers as *intermediate* levels of force."[9]

47. Because Tasers constitute such an increase use of force, the law imposes a greater burden on the government to justify their use during arrests.[10]

## TASER MISUSE BY LOCAL POLICE

48. From 2004 to 2009, there have been five reported deaths[11]—one fatality each year—related to Taser usage by law enforcement in Tarrant County.  Dallas has reported a similar history with one death occurring as recently as September, 2010.

49. In May, 2010, the City of Ft. Worth publicly settled the claims of the estate of African-American Michael Patrick Jacobs for $2 million.  In the Jacobs incident, the Tarrant County Medical Examiner determined that Jacobs had been shocked twice—once for 49 seconds and a second time for five seconds before he was killed.  Following the death of Jacobs, another incident occurred in Ft. Worth where an officer tased an individual who was holding a child in a Wal-Mart.

50. Following the five separate taser-related deaths involving local police, local civil rights leaders repeatedly implored multiple police departments, including Arlington's, not to purchase anymore Tasers and to quit using the 50,000 volt weapons indiscriminately.

---

[8] *Bryan, citing* GAO., *Taser Weapons: Use of Tasers by Selected Law Enforcement Agencies,* at 7-10 (May 2005).
[9] *Id.*
[10] *Id.*
[11] November 2, 2004: Robert Guerrero, 21, Fort Worth, Texas
April 3, 2005: Eric Hammock, 43, Fort Worth, Texas
June 24, 2005: Carolyn Daniels, 25, Fort Worth, Texas
August 23, 2006: Noah Lopez, 25, Fort Worth, Texas
April 18, 2009: Michael Jacobs Jr., 24, Fort Worth, Texas

## ARLINGTON POLICE ADOPT WIDER USE OF TASERS

51. In May, 2010, Arlington Police Chief Theron Brown publicly announced his intentions for his department to acquire an additional 300 Tasers. Despite the obvious risks of more generalized use, in the same public announcement, Arlington's Deputy Chief James Hawthorne said, the Police Department wants to have an electric-shock weapon available for every officer as standard equipment for its force of more than six hundred.

52. The City of Arlington, through its relevant law enforcement policymaker—the chief of police—has continued to endorse and promulgate policies and customs of use and training of indiscriminate use of Tasers when such force is excessive. As civil rights leaders have repeatedly informed the City of Arlington, the incidents involving Taser usage disproportionately have been used against members of the African-American community.

53. But for these acts and omissions of policy, custom, training and discipline, Plaintiffs rights under the Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution would not have been violated.

### V.

### CAUSES OF ACTION

### Count 1—Violation of Constitutional Rights

54. The allegations contained in all of the paragraphs of this Original Complaint are hereby incorporated and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim. Defendants exercise of these established policies and customs violated the Plaintiff's clearly established rights under the United States Constitution to

    a.  freedom from unreasonable seizure of his person;

    b.  freedom from the use of unreasonable, unnecessary, and excessive force;

    c.   freedom from excessive use of a Taser;[12]

    d.  the right to medical care for injuries received while in custody;

### Count 2—42 U.S.C § 1983 Against Individual Defendants

55. The allegations contained in all of the paragraphs of this Original Complaint are hereby incorporated and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim. Defendant Vo and the City of Arlington's exercise of these established policies and customs violated the Plaintiff's clearly established rights under the United States Constitution to

    a.  freedom from unreasonable seizure of his person;

    b.  freedom from the use of unreasonable, unnecessary, and excessive force;

    c.  freedom from the use of deadly force; and

    d.  the right to medical care for injuries received while in custody;

### Count 3—42 U.S.C § 1983 Against Policymakers and the City of Arlington

56. Under controlling federal law, Chief Brown and Deputy Chief Hawthorne are policymakers for Arlington Police Department.[13] The policies of these two individuals— including acts and omissions, including hiring, training, disciplining, reprimanding and terminating officers, including Defendant Vo, as well as admitting errors[14] for officer and supervisor conduct—were a moving force that violated Plaintiff's clearly established

---

[12] *See Autin v. City of Baytown,* 174 Appx. 183, 186 (5th Cir. 2005); *Priester v. City of Riviera Beach,* 208 F.3d 919, 925 (11th Cir.2000).
[13] *Fraire v. City of Arlington,* 957 F.2d 1268, 1279 n.45 (5th Cir. 1992).
[14] *See Grandstaff v. City of Borger,* 767 F.2d 161, 170-71 ( 5th Cir.1985).

rights under the United States Constitution to

    a.  freedom from unreasonable seizure of his person;

    b.  freedom from the use of unreasonable, unnecessary, and excessive force;

    c.  freedom from the use of deadly force; and

    d.  the right to medical care for injuries received while in custody;

## VI.

## ACTUAL & EXEMPLARY DAMAGES

57. As a consequence of Defendants' wrongful acts as described above, Plaintiff has suffered actual damages exceeding the minimum jurisdictional limits of this Court.

58. As a direct and proximate result of Defendants' acts and omissions as heretofore alleged, Plaintiff suffered physical impairment, excruciating pain, mental anguish and medical. Plaintiff is therefore entitled to recover all reasonable and necessary medical expenses. incurred that resulted from the acts of Defendants. In addition, Plaintiff has an action for the injuries suffered, including but not limited to the disfigurement, humiliation, past pain and suffering, mental anguish and physical capacity and loss of income suffered as a result of the incident.

59. Plaintiff seeks exemplary damages against Defendant Vo, who despite lacking probable cause to arrest Plaintiff, and who had been informed repeatedly and promptly by several individuals at the scene that he had seized the wrong person, continuously employed his Taser multiple times against Plaintiff.[15]

---

[15] *See Autin v. City of Baytown,* 174 Appx. 183, 186 (5th Cir. 2005); *Priester v. City of Riviera Beach,* 208 F.3d 919, 925 (11th Cir.2000).

## VII.

## ATTORNEYS' FEES

60. Plaintiff are further entitled to receive her reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## VIII.

## INTEREST

61. Plaintiff is further entitled to receive pre-judgment and post-judgment interest at the highest interest rates allowed by law.

## IX.

## JURY DEMAND

92. Plaintiff demands a jury trial.

## X.

## CONCLUSION

93. Plaintiff specifically reserves his right to bring additional causes of action against Defendants and to amend their Petition as necessary.

94. WHEREFORE, PREMISES CONSIDERED

   (1)    Actual and consequential damages as determined at a trial on the merits;

   (2)    Mental anguish damages;

   (3)    Punitive damages as determined at a trial on the merits;

   (4)    Cost of suit;

   (5)    Reasonable and necessary attorneys' and paralegals' fees;

(6)     Reasonable and necessary expert fees;

(7)     Pre-judgment and post-judgment interest at the maximum rate allowed by law;

(8)     Such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**HENLEY & HENLEY, P.C.**
2205 N. Henderson Avenue
Dallas, Texas 75206
Telephone: (214) 821-0222
Facsimile: (214) 821-0124

By:_____
Geoff J. Henley
Texas State Bar No. 00798825
Federal I.D. No. 30791
H. Hudson Henley
State Bar No. 09465020

JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JONATHAN PIERCE | THE CITY OF ARLINGTON; OFFICER AARON BROWN; DEPUTY POLICE CHIEF JAMES HAWTHORNE, OFFICER D. VASS |
| **(b)** County of Residence of First Listed Plaintiff  DALLAS | County of Residence of First Listed Defendant  TARRANT |
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number) Geoff J. Henley, HENLEY & HENLEY, P.C., 2205 N. Henderson Avenue Dallas, Texas 75206 (214) 821-0222 | Attorneys (If Known) 4-11CV-193-Y |

RECEIVED TE
U.S. DIST. OF TX
FORT WORTH DIVISION
CLERK U.S. DISTRICT COURT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
TITLE 42 U.S.C. 1983 and the Fourth and Fourteenth Amendment of the U.S. Constitution
Brief description of cause:
Officer used excessive force (TASING multiple times) and arrested a completely innocent person.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:   (See instructions)
JUDGE ___   DOCKET NUMBER ___

DATE 03/24/2011   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # FW013850   AMOUNT $350.00   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___